UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN L. CURTIS (#279541),

                                CASE NO. 2:11-CV-14337
        Plaintiff,         JUDGE DAVID M. LAWSON
                                MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CARRON CALDWELL,

                Defendant,

_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANT CALDWELL'S
DECEMBER 29, 2011 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 9)**

Table of Contents

I.      **RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    Defendant Caldwell's Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      C.    Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      D.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            1.    MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners") . . . . . . . . . . . . 4
            2.    Plaintiff's October 3, 2011 complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
            3.    Curtis's claims for injunctive and/or declaratory relief are now moot; only his claim for
                 monetary damages remains. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            4.    Curtis's claims for monetary damages against Caldwell in her official capacity are barred
                 by the Eleventh Amendment; however, Curtis may pursue his claims for monetary
                 damages against Caldwell in her personal capacity. . . . . . . . . . . . . . . . . . . . . . . . . . 10
            5.    Curtis has not properly exhausted his available administrative remedies. . . . . . . . . . . 11
            6.    Caldwell has shown she was not personally involved in the alleged denial of Curtis's
                 request for Native American Religious Services with "Native American Ways" at RRF,
                 and plaintiff has not properly supported his response. . . . . . . . . . . . . . . . . . . . . . . . 19
            7.    The Court need not address whether Caldwell is entitled to qualified immunity. . . . . . 24

III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**I.**    **RECOMMENDATION:**  The Court should grant defendant Caldwell's December 29, 2011 motion for summary judgment (Doc. Ent. 9).

**II.**    **REPORT:**

**A.**    **Background**

Kevin L. Curtis (#279541) is currently incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  He is serving a 20-50 year sentence for an April 23, 1999 offense of criminal sexual conduct in violation of Mich. Comp. Laws § 750.520f ("Second or subsequent offense; penalty.").  Case No. 99-001371-FC (Clare County).[1]

On October 3, 2011, while incarcerated at the Ryan Correctional Facility (RRF) in Detroit, Michigan, Curtis filed a verified complaint[2] against C. (Carron) Caldwell, described as a Chaplain located at RRF.  Doc. Ent. 1 at 1-5, Doc. Ent. 1 at 6-14 (Brief); *see also* Doc. Ent. 9 at 6.[3]

**B.**    **Defendant Caldwell's Motion for Summary Judgment**

Judge Lawson has referred this case to me to conduct all pretrial matters.  Doc. Ent. 4.

---

[1]*See* www.michigan.gov/corrections, "Offender Search;" Doc. Ent. 13 at 1 (Apr. 2012 Notice of Change of Address/Contact Information).

[2]Plaintiff's complaint is signed under penalty of perjury.  Doc. Ent. 1 at 5.

[3]Plaintiff also filed an application to proceed without prepayment of fees (Doc. Ent. 2), which the Court granted on November 1, 2011 (Doc. Ent. 5).  Also on November 1, 2011, the Court entered an order directing service without prepayment of costs and authorizing the U.S. Marshal to collect costs after service is made (Doc. Ent. 6).  That same day, the U.S. Marshal Service acknowledged receipt of service of process documents (Doc. Ent. 7).  The U.S. Marshal attempted service by mail on November 2, 2011.

On November 30, 2011, the Attorney General of the State of Michigan entered an appearance on behalf of defendant Caldwell.  Doc. Ent. 8.

Currently before the Court is defendant Caldwell's December 29, 2011 motion for summary judgment.  Doc. Ent. 9.  First, Caldwell argues that "Plaintiff did not file a grievance regarding his allegations against [her]."  Doc. Ent. 9 at 7-11.  Second, she argues that she "is not authorized to grant or deny Plaintiff's request for group religious services."  Doc. Ent. 9 at 12-15.  Finally, she argues that she "is entitled to Eleventh Amendment and Qualified immunities."  Doc. Ent. 9 at 15-17.  *See also* Doc. Ent. 9 at 3.

Plaintiff filed a response on January 13, 2012.  Doc. Ent. 10.  On January 23, 2012, Caldwell filed a reply.  Doc. Ent. 11; *see also* Doc. Ent. 12 (MDOC PD 03.02.130, "Prisoner/Parolee Grievances," effective 12/19/2003).

## C.    Fed. R. Civ. P. 56 ("Summary Judgment")

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).

With respect to supporting factual positions, Fed. R. Civ. P. 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c)(1).

Fed. R. Civ. P. 56 further provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) ("*Affidavits or Declarations.*").  Also, it states:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1)  give an opportunity to properly support or address the fact;
> (2)  consider the fact undisputed for purposes of the motion;
> (3)  grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
> (4)  issue any other appropriate order.

Fed. R. Civ. P. 56(e) ("Failing to Properly Support or Address a Fact.").

**D.   Discussion**

**1.   MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners")**

Within his August 15, 2011 grievance (Doc. Ent. 10 at 3) and his October 3, 2011 complaint (Doc. Ent. 1 at 10, 12), Curtis cites certain portions of MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners").  A copy of this policy, effective September 20, 2007, is part of the record in this case.  *See* Doc. Ent. 9-5 at 5-14.

Among other things, MDOC PD 05.03.150 generally provides:

> Religious freedom is a constitutionally guaranteed right.  All recognized religions shall enjoy equal status and protection, subject to those limitations necessary to maintain the order and security of the facility, including the health and safety of prisoners and staff.

MDOC PD 05.03.150 ¶ C, effective 09/20/07.

4

Within its discussion of department recognized religious groups, the policy provides that "[t]he [Correctional Facilities Administration (CFA)] Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition and, if so, whether group religious services and activities and personal religious property will be allowed." MDOC PD 05.03.150 ¶ M, effective 09/20/07.  And, within its discussion of group services and activity, this policy provides:

> Group religious services shall be offered at all CFA facilities and [Technical Rule Violation Centers] TRVs for prisoners belonging to a recognized religious group. Except as set forth in Attachment A, each group shall be allowed a weekly religious service if resources permit; however, a service is not required to be conducted at a CFA institution if there are less than five prisoners within the same security level of that institution who actively participate in the religious activities of a group.

MDOC PD 05.03.150 ¶ X, effective 09/20/07 (emphasis added).

This policy also contains several statements about matters which would constitute a threat to the facility.  For example, "[t]he Warden may suspend religious group services and activities if holding the service or activity would constitute a threat to the order and security of the institution."  MDOC PD 05.03.150 ¶ EE, effective 09/20/07.  Also, "[i]n addition to religious reading material, prisoners are allowed to possess personal religious property which are necessary to the practice of the prisoner's religion unless the item presents a threat to the custody and security of the facility[.]"  MDOC PD 05.03.150 ¶ II, effective 09/20/07.  Furthermore, "[t]he CFA Deputy Director shall make the final decision as to whether the religious item will be approved based on whether it is necessary to the practice of the prisoner's religion and whether possession of the item would pose a threat to the custody and security of the facility."  MDOC PD 05.03.150 ¶ KK, effective 09/20/07.  And, with respect to religious menus and meals, the policy

provides that "[a]pproval shall be granted only if the fast is necessary to the practice of a bona fide

religion and observance of the fast would not pose a threat to the order and security of the

facility."  MDOC PD 05.03.150 ¶ XX, effective 09/20/07.

To be sure, Native American is a recognized religious group authorized to conduct group

religious services/activities.  Among the items such prisoners are permitted to possess are:

- One medicine bag, no larger than 3"x5" when laid flat, with contents restricted to sage, sweet grass, cedar, bear berry leaf, mullein leaf, red willow bark, red sumac leaf, spearmint leaf, peppermint leaf, and lavender. The contents also may include protection medicine, such as a small pebble or piece of legal vegetation, that is considered by the prisoner to have special significance but does not pose a threat to the custody and security of the facility. (when the medicine bag is worn, must be worn around neck on strip of leather or string no longer than 24")

- Two braids of sweet grass for smudging during group religious ceremonies and activities unless sweet grass also is part of contents of medicine bag; maximum one braid per order.

*See* MDOC PD 05.03.150A, effective 08/16/10.

## 2.    Plaintiff's October 3, 2011 complaint

In his complaint, plaintiff claims:

I sta[r]ted working in July 2010 to get the Native American Religious services, with "Native American Traditional Ways" star[t]ed here at [RRF].  Chaplain Caldwell keeps blocking these services from coming into the facility.  I talked to the Chaplain *again* on August 17, 2011 and she said as long as she is Chaplain here these savages would not get these services.  Chaplain Caldwell is violating my First Amendment rights to Religion.

Doc. Ent. 1 at 4 (emphasis added); *see also* Doc. Ent. 1 at 10.  Curtis further describes the August

17, 2011 conversation as follows:

On August 17, 2011 Chaplain Caldwell called Plaintiff out to talk with him. Plaintiff ask[ed] why she [would not] let Native American services in.  She

claimed there [were] not enough inmates to join[,] so Plaintiff showed her the kites of 10 other inmates, and she also said because of the matches needed that she would have to be responsible for, here at [RRF].  At the end she stated that she will not allow the Native American services for the savages.

Doc. Ent. 1 at 10.

Plaintiff argues that Caldwell violated his "First Amendment Rights when [she] refuse[d] to allow Plaintiff his Religious Services[.]"  Doc. Ent. 1 at 9.  In arguing that Caldwell is violating his First Amendment right to religious freedom, Curtis cites MDOC PD 05.03.150 ¶¶ C, X, effective 09/20/07.  Curtis then contends that Native Americans at RRF "have been trying to get their Native American Religious Services with 'native American Traditional Ways' approved but [Caldwell] will not approve this religion."  Furthermore, plaintiff alleges that "[a]ll other facilities in the State have this religion but the Native Americans at this facility are being denied their First Amendment rights."  Doc. Ent. 1 at 10.  *See also* Doc. Ent. 1 at 12.

According to plaintiff, Caldwell "believes she can violate the United States Constitution[.]"  Doc. Ent. 1 at 11.  Plaintiff requests that the Court "[o]rder [Caldwell] to clear the way for the Native American Religious Services to come in with Native American Traditional ways, and [o]rder that Plaintiff receive damages of 1.5 Million Dollars for the violation and misuse of [Caldwell]'s power at [RRF]."  Doc. Ent. 1 at 5, 13-14.

7

Among the cases cited by plaintiff are *Barnett v. Rodgers*, 410 F.2d 995 (D.C. Cir. 1969);[4]

*City of Boerne v. Flores*, 521 U.S. 507 (1997);[5] *Friend v. Kolodzieczak*, 923 F.2d 126 (9th Cir.

1991);[6] *Malik v. Brown*, 16 F.3d 330 (9th Cir. 1994);[7] *O'Lone v. Estate of Shabazz*, 482 U.S. 342

(1987);[8] and *Turner v. Safley*, 482 U.S. 78 (1987).[9]  Doc. Ent. 1 at 8, 12-13.  Curtis also cites *The*

---

[4]"Treatment that degrades the inmate, invades his privacy, and frustrates the ability to choose pursuits through which he can manifest himself and gain self-respect erodes the very foundations upon which he can prepare for a socially useful life.  Religion in prison subserves the rehabilitative function by providing an area within which the inmate may reclaim his dignity and reassert his individuality."  *Barnett*, 410 F.2d at 1002 (internal footnote omitted).

"We do not reach the question whether appellee has violated the Constitution here.  We do hold that the District Court erred in dismissing appellants' petitions without determining whether the impediments to appellants' observance of their dietary creed have compelling justifications, and whether the governmental purposes and operations responsible for those impediments could feasibly by 'pursued by means that (less) broadly stifle fundamental personal liberties.'"  *Barnett*, 410 F.2d at 1003 (quoting *Shelton v. Tucker*, 364 U.S. 479, 488 (1960)) (footnotes omitted).

[5]"A decision by local zoning authorities to deny a church a building permit was challenged under the Religious Freedom Restoration Act of 1993 (RFRA or Act), 107 Stat. 1488, 42 U.S.C. § 2000bb et seq. The case calls into question the authority of Congress to enact RFRA. We conclude the statute exceeds Congress' power."  *City of Boerne*, 521 U.S. at 511.

[6]"In this class action, inmates of Alameda North County Jail appeal the summary judgment in their section 1983 action challenging as unconstitutional a prison regulation prohibiting them from possessing rosaries and scapulars in their cells. We affirm."  *Friend*, 923 F.2d at 127.

[7]"Dawud Halisi Malik brought suit under 42 U.S.C. §§ 1983 and 1985, alleging that prison officials violated his statutory and constitutional rights by refusing to process mail and documents in which the plaintiff used his religious name. Plaintiff claims he was subjected to disciplinary action for using his religious name in addition to his committed name. The district court granted summary judgment in favor of defendant prison officials, and Malik appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand."  *Malik*, 16 F.3d at 331.

[8]"This case requires us to consider once again the standard of review for prison regulations claimed to inhibit the exercise of constitutional rights. Respondents, members of the Islamic faith, were prisoners in New Jersey's Leesburg State Prison.  They challenged policies adopted by prison officials which resulted in their inability to attend Jumu'ah, a weekly Muslim congregational service regularly held in the main prison building and in a separate facility known as 'the Farm.'  Jumu'ah is commanded by the Koran and must be held every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer.  *See* Koran 62:9-10; Brief for Imam Jamil Abdullah Al-Amin et al. as Amici Curiae 18-31. There is no question that respondents' sincerely held religious beliefs

*Religious Rights of the Incarcerated*, 125 U. Pa. L. Rev. 812 (Apr. 1977) and the Religious

Freedom Restoration Act of 1993 (RFRA).[10]  Doc. Ent. 1 at 13.

In the end, Curtis asserts, "[t]he Chaplain at this facility is violating Plaintiff's First

Amendment right to his Native American Religious Services.  Being a Chaplain[,] [Caldwell]

knows she is violating this right."  Doc. Ent. 1 at 13.

**3.      Curtis's claims for injunctive and/or declaratory relief are now moot; only his claim for monetary damages remains.**

As an initial matter, I note that Curtis's claims for injunctive and/or declaratory relief are

now moot, as he has been transferred from RRF to URF.  *See* Doc. Ent. 13 at 1 (Notice of Change

of Address/Contact Information); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent

Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined

to the institution that searched his mail.").

However, plaintiff's request for relief in the form of "damages of 1.5 Million Dollars for

the violation and misuse of [Caldwell's] power at [RRF][,]" Doc. Ent. 1 at 5, 13-14, must still be

addressed by the Court.

---

compelled attendance at Jumu'ah. We hold that the prison regulations here challenged did not violate respondents' rights under the Free Exercise Clause of the First Amendment to the United States Constitution." *O'Lone*, 482 U.S. at 344-345 (internal footnote omitted).

[9]"This case requires us to determine the constitutionality of regulations promulgated by the Missouri Division of Corrections relating to inmate marriages and inmate-to-inmate correspondence. The Court of Appeals for the Eighth Circuit, applying a strict scrutiny analysis, concluded that the regulations violate respondents' constitutional rights. We hold that a lesser standard of scrutiny is appropriate in determining the constitutionality of the prison rules. Applying that standard, we uphold the validity of the correspondence regulation, but we conclude that the marriage restriction cannot be sustained." *Turner*, 482 U.S. at 81.

[10]The RFRA is codified at 42 U.S.C. §§ 2000bb-2000bb-4.

4.     **Curtis's claims for monetary damages against Caldwell in her official capacity are barred by the Eleventh Amendment; however, Curtis may pursue his claims for monetary damages against Caldwell in her personal capacity.**

Curtis sues Caldwell in both her personal and official capacities.  Doc. Ent. 1 at 1.  As noted above, plaintiff's only remaining claim is for monetary damages.  In the instant motion, Caldwell contends she is entitled to Eleventh Amendment immunity.  Doc. Ent. 9 at 15-16.

The Eleventh Amendment to the United States Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.

"It is well-established that a plaintiff cannot sue a state agency or any of its employees in their official capacities for monetary damages." *Turker v. Ohio Dept. of Rehabilitation and Corrections*, 157 F.3d 453, 456 (6th Cir. 1998).  "It is equally well-established that a federal court cannot entertain a lawsuit against state officials for violations of state law unless the state has waived its immunity under the Eleventh Amendment." *Turker*, 157 F.3d at 456-457 (footnote omitted).

Therefore, to the extent Caldwell "is an employee of the State of Michigan who acted in her official capacity[,]" Doc. Ent. 9 at 15, and in light of the fact that "[n]either Congress nor the State of Michigan have waived Eleventh Amendment immunity for suits brought under § 1983[,]" *Dewald v. Clinton*, No. 09-13117, 2010 WL 3583385, 7 (E.D. Mich. Sept. 13, 2010) (Duggan, J.), the Court should agree that Caldwell "enjoys Eleventh Amendment immunity in her official capacity."  Doc. Ent. 9 at 16.

10

However, "[a] plaintiff . . . may sue state officials for monetary damages in their individual capacities under § 1983 without running afoul of the Eleventh Amendment." *Turker*, 157 F.3d at 457.  Therefore, plaintiff may pursue his claim for monetary damages against defendant Caldwell in her personal capacity.

**5.      Curtis has not properly exhausted his available administrative remedies.**

**a.      42 U.S.C. § 1997e ("Suits by prisoners")**

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the United States Supreme Court considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" and held that "proper exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84.  The following year, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained:

> In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," - rules that are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218 (internal citations omitted).

**b.      Caldwell's Grievance Dated August 15, 2011**

11

According to plaintiff, he did not file a Step I grievance or appeal to Step II.  Rather, he claims to have appealed to Step III, "but they never answered."  Doc. Ent. 1 at 3.

On August 15, 2011, Curtis completed a Step I grievance form (CSJ-247A).  Therein, Curtis explained that he "talked to Chaplain Caldwell [s]tarting last year about getting Religious Services for the Native Americans.  It did not happen.  I kited Chaplain Caldwell again with no response.  This all started in July 2011, and had continued until 8/15/11."  Doc. Ent. 10 at 3.  In the body of this grievance, Curtis stated:

> Complaint: Staff Corruption.
>
> The Native Americans here at [RRF] have been trying to get their Native American Religious Services, with "Native American Traditional ways" approved, but Chaplain Caldwell will not ap[p]rove this Religion.  Last year she said there [were] not enough [numbers or members] when in fact there [were] 10 inmates who wanted the services. . . . In this case there [were] 10 who want[ed] the services[.]
>
> Chaplain Caldwell is violating these inmates First Amendment rights by refusing to permit these Native Americans from having their services. . . . There is no limitation necessary with this religion for most other facilities have this religion.

Doc. Ent. 10 at 3.

### c.    Caldwell's argument

With respect to defendant Caldwell's argument that Curtis "did not file a grievance regarding his allegations against Defendant Caldwell[,]" Doc. Ent. 9 at 7-11, Caldwell specifically argues that "Curtis has not properly exhausted as to [her] because he did not file a grievance naming her regarding any issue raised in his complaint."  Doc. Ent. 9 at 10-11.

At the outset, Caldwell points to plaintiff's October 3, 2011 admissions that he did not file a Step I grievance or a Step II grievance appeal (Doc. Ent. 1 at 3).  Next, Caldwell provides three

attachments in support of her argument that plaintiff Curtis has not properly exhausted his administrative remedies.

Therefore, Caldwell concludes that Curtis has not properly exhausted his administrative remedies as set forth in *Woodford v. Ngo*, 548 U.S. 81(2006) and *Jones v. Bock*, 549 U.S. 199 (2007).  Doc. Ent. 9 at 11.

**d.      Curtis's response**

In response to Caldwell's exhaustion argument, Curtis notes that he talked to Caldwell "starting on 7/10 through [August 15, 2011]."  He claims he "wrote a step one grievance and it was never responded to."  Then, referring to the aforementioned August 15, 2011 Step I grievance form, plaintiff claims, "[o]n August 15, 2011[,] [he] wrote a grievance for Staff Corruption and sent it straight to Lansing.  Lansing did not answer this grievance as of yet."  Furthermore, plaintiff contends, "[o]n August 17, 2011 Chaplain Caldwell called Plaintiff out to talk with him[,]" and he asked her why she would not let Native American Services in.  According to plaintiff, Caldwell claimed there were not enough inmates to join, so plaintiff "showed her the kites of 10 other inmates[.]"  Allegedly, Caldwell also explained that she would have to be responsible for the matches needed.  At the end, plaintiff claims, Caldwell stated she "[would] not allow the Native American Services for the savages."  Thus, it is plaintiff's position that he has exhausted his state remedies.  Doc. Ent. 10 at 1.

**e.      Caldwell's reply**

Defendant Caldwell contends that plaintiff Curtis's response "fails to demonstrate compliance with the grievance policy which was in effect at the time."  Doc. Ent. 11 at 1.  In support of this position, defendant Caldwell makes three points.

13

First, with respect to plaintiff's January 13, 2012 assertion that he "wrote a step one grievance and it was never responded to[,]" Doc. Ent. 10 at 1, defendant Caldwell refers to plaintiff's October 3, 2011 representation that he did not file a grievance with the Step I Grievance Coordinator (Doc. Ent. 1 at 3). And, defendant Caldwell points out, plaintiff Curtis did not attach a copy of this alleged grievance to his January 13, 2012 response (Doc. Ent. 10), even though Grievance Coordinator Curenton's December 27, 2011 affidavit stated she "could not locate a grievance in which Curtis, #279541, complained about the lack of Native American group religious services[,]" (Doc. Ent. 9-2 ¶ 3). Doc. Ent. 11 at 2-3. Defendant Caldwell then points out that, had plaintiff Curtis submitted a grievance, he would have been entitled to an interview in accordance with MDOC PD 03.02.130 ¶ Y (Doc. Ent. 9-1).[11] Defendant Caldwell contends that plaintiff Curtis had to know his grievance was not received, because he was never interviewed. Furthermore, noting that Step I grievance responses are due within 15 business days, MDOC PD 03.02.130 ¶ X, it is defendant Caldwell's position that plaintiff Curtis "should have known that after the expiration of 15 business days, that either his grievance was never received or that the response was late." Likewise, noting MDOC PD 03.02.130 ¶ T[12] and MDOC

---

[11]Within the "Step I" description, the policy provides in part that "[t]he respondent shall interview the grievance unless s/he refuses to participate in the interview, the respondent is not assigned to the location at which the grievant is confined, or, if the grievant is on parole in the community, the respondent does not have ready access to the field office to which the grievant is assigned." MDOC PD 03.02.130, effective 07/09/2007, ¶ Y.

[12]"If a grievant chooses to pursue a grievance which has not ben responded to by staff within the required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired, including any extensions which have been granted." MDOC PD 03.02.130, effective 07/09/2007, ¶ T.

14

PD 03.02.130 ¶ BB,[13] defendant Caldwell points out that plaintiff Curtis "would have had to

request [a Step II grievance appeal] form from the Step I Grievance Coordinator."  Here,

defendant Caldwell notes plaintiff Curtis's October 3, 2011 representation that he did not appeal

to the Step 2 Grievance Coordinator (Doc. Ent. 1 at 3); Konieczki's December 19, 2011

representation that he could not locate a Step II grievance in which plaintiff Curtis "complained

about the lack of Native American group religious services[,]" Doc. Ent. 9-3 ¶ 3; and the absence

of an assertion in plaintiff's January 13, 2012 response that he filed a Step II grievance appeal

(*see* Doc. Ent. 10 at 1).  Doc. Ent. 11 at 2.  Therefore, defendant Caldwell argues that plaintiff did

not properly exhaust his administrative remedies in accordance with *Jones v. Bock*, 549 U.S. 199,

218 (2007).  Doc. Ent. 11 at 3.

        Second, with respect to plaintiff's January 13, 2012 assertion that he sent a staff

corruption grievance straight to Lansing on or about August 15, 2011 but such grievance had not

yet been answered (Doc. Ent. 10 at 1), it is defendant Caldwell's position that plaintiff Curtis "has

again failed to follow the proper process for exhausting his administrative remedies."

Specifically, defendant Caldwell acknowledges that "[t]here was a time when a prisoner could file

a limited type of grievance[] directly at Step III[,]" but this is no longer the case.  Doc. Ent. 11 at

---

        [13]"A grievant may file a Step II grievance if s/he is dissatisfied with the response received
at Step I or if s/he did not receive a timely response. To file a Step II grievance, the grievant must
request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and
send the completed form to the Step II Grievance Coordinator designated for the facility, field office,
or other office being grieved within ten business days after receiving the Step I response or, if no
response was received, within ten business days after the date the response was due, including any
extensions. If the office being grieved does not have a designated Grievance Coordinator, the
grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he
is housed or appropriate field office for processing."  MDOC PD 03.02.130, effective 07/09/2007,
¶ BB.

3; *compare* Doc. Ent. 9-1 (MDOC PD 03.02.130, "Prisoner/Parolee Grievances," effective 07/09/2007), Doc. Ent. 12 (MDOC PD 03.02.130, "Prisoner/Parolee Grievances," effective 12/19/2003 ¶ S).[14]  Furthermore, Caldwell contends that, even if Curtis could have filed a grievance directly to Step III, Curtis "acknowledges that he has yet to receive a response[;]" therefore, the instant lawsuit is premature on the basis that exhaustion under 42 U.S.C. § 1997e(a) is a prerequisite to filing a prisoner civil rights lawsuit.  Doc. Ent. 11 at 3-4.[15]

Finally, defendant Caldwell points out that plaintiff's August 15, 2011 grievance pre-dates plaintiff's alleged August 17, 2011 conversation with Caldwell, which plaintiff describes in his complaint (Doc. Ent. 1 at 4, 10) and response (Doc. Ent. 10 at 1).  Therefore, Caldwell explains, the August 15, 2011 grievance "could not address [plaintiff's] Complaint issues which transpired two days later."  Doc. Ent. 11 at 4.

### f.    Conclusion

Upon consideration, the Court should conclude that plaintiff Curtis has not properly exhausted his available administrative remedies with respect to his claims against defendant Caldwell.

As an initial matter, I agree that it is "simply impossible to file a grievance regarding an event which is yet to happen[,]" Doc. Ent. 11 at 4; however, I construe plaintiff's purported

---

[14]The version of MDOC PD 03.02.130 which was effective on December 19, 2003 stated in part as follows: "A grievant may file a grievance alleging racial or ethnic discrimination or staff brutality or corruption directly to Step III.  A grievant also may file a grievance directly to Step III regarding his/her removal as a housing unit representative by the Warden or CFA Deputy Director pursuant to PD 04.01.150 'Prisoner Housing Unit Representatives/Wardens' Forum'."  MDOC PD 03.02.130, effective 12/19/2003, ¶ S; *see also* Doc. Ent. 12.

[15]"The plain language of the statute [42 U.S.C. § 1997e(a)] makes exhaustion a precondition to filing an action in federal court[.]"  *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

August 15, 2011 Step I grievance (Doc. Ent. 10 at 3) and plaintiff's October 3, 2011 complaint (Doc. Ent. 1) as based upon plaintiff's difficulty in bringing Native American religious services to RRF, and not solely based upon the contents or result of his alleged August 17, 2011 conversation with defendant Caldwell.  This interpretation is consistent with his complaint, which states, "Chaplain Caldwell keeps blocking these services from coming into [RRF][,]" Doc. Ent. 1 at 4, and the body of his alleged August 15, 2011 grievance, which states, "Chaplain Caldwell will not ap[p]rove this Religion[,]" and "there [were] 10 who want[ed] the services[,]" Doc. Ent. 10 at 3.

The Supreme Court has concluded that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Even so, plaintiff's verified complaint and the affidavits in support of defendant Caldwell's motion show that plaintiff has not properly exhausted his administrative remedies.

First, in his verified October 3, 2011 complaint, plaintiff specifically states that he did not file a grievance with the Step I grievance coordinator and did not appeal to the Step II grievance coordinator.  Rather, he claims to have appealed to the Step III grievance coordinator, but "they never answered."  Doc. Ent. 1 at 3.  As indicated above, the current version of MDOC PD 03.02.130, which has been in effect since July 9, 2007, does not allow for a grievance to be sent directly to Step III as was the case in a previous version of the policy.  In fact, the current policy expressly provides:

> Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy. This includes but is not limited to complaints of conduct in violation of PD 03.03.140 "Prohibited Sexual Conduct Involving Prisoners".

MDOC PD 03.02.130, effective 07/09/07, ¶ B.

Second, defendant Caldwell has provided affidavits which are consistent with a conclusion that Curtis has failed to properly exhaust his available administrative remedies.  For example, in her December 27, 2011 affidavit, RRF Acting Step I Grievance Coordinator Sherry Curenton attested that she "personally reviewed the records and files maintained concerning Step I grievances at RRF and could not locate a grievance in which Curtis, #279541, complained about the lack of Native American group religious services."  Doc. Ent. 9-2 ¶ 3.  In his December 19, 2011 affidavit, RRF Warden's Administrative Assistant and Step II Grievance Coordinator Frank Konieczki attested that he "personally reviewed the records and files maintained concerning Step II grievances at RRF and could not locate a grievance in which Curtis, #279541, complained about the lack of Native American group religious services."  Doc. Ent. 9-3 ¶ 3.  Finally, according to a November 14, 2011 memorandum regarding Step III grievance inquiries, the only Step III grievance attributable to Curtis for the period 1999 to present is a 2003 Step III grievance attributable to Bellamy Creek Correctional Facility (IBC).  Doc. Ent. 9-4 (Step III Grievance Inquiry Screens).

Third, in his unverified January 13, 2012 response, Curtis claims to have written a Step I grievance regarding which he never received a response.  Doc. Ent. 10 at 1.  However, he does not substantiate this representation with an attachment.  Also, although he attaches an August 15, 2011 grievance for Staff Corruption, which happens to be drafted on a Step I grievance form (CSJ-247A), he refers to this grievance as the one he sent directly to Lansing, in other words, Step III.  *See* Doc. Ent. 10 at 1, 3.  "A grievant shall use a Prisoner/Parolee Grievance

18

(CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal (CSJ-247B) shall be used to file a Step II or Step III grievance."  MDOC PD 03.02.130, effective 07/09/07, ¶ R.

Finally, even if the Court were to assume that (a) Curtis's attached August 15, 2011 grievance, which is blank in the Grievance Identifier field, was actually submitted to the Step I Grievance Coordinator and (b) plaintiff's August 17, 2011 discussion with Caldwell - referred to in plaintiff's complaint and response - was an interview based upon that grievance, MDOC PD 03.02.130, effective 07/09/07, ¶¶ X, Y, it does not appear that plaintiff pursued a Step II grievance appeal.  I reach this conclusion based upon the aforementioned affidavit of Step II Grievance Coordinator Frank Konieczki (Doc. Ent. 9-3 ¶ 3) and the fact that plaintiff's unverified response makes no allegation that he attempted to appeal to Step II, such as by requesting a Step II grievance appeal form (CSJ-247B).  *See* Doc. Ent. 10 at 1.

**6.      Caldwell has shown she was not personally involved in the alleged denial of Curtis's request for Native American Religious Services with "Native American Ways" at RRF, and plaintiff has not properly supported his response.**

"Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872-74 (6th Cir. 1982)).

With respect to personal involvement, defendant Caldwell argues she "is not authorized to grant or deny Plaintiff's request for group religious services[,]" Doc. Ent. 9 at 12-15.[16]  Citing MDOC PD 05.03.150 ¶ X, Chaplain asserts that "she has not received requests from the minimum number (5) of prisoners who indicate that their faith is Native American and want to have group services scheduled at RRF."  Doc. Ent. 9 at 13.  Caldwell also disputes plaintiff's assertion that "he provided correspondence from ten other prisoners during a conversation with her on August 17, 2011[.]"  Doc. Ent. 9 at 13-14.  Additionally, Caldwell cites *Shehee v. Lutrell*, 199 F.3d 295 (6th Cir. 1999)[17] and *Hendrickson v. Caruso*, No. 1:07-cv-304, 2008 WL 623788 (W.D. Mich. Mar. 4, 2008) (Maloney, J., adopting report and recommendation of Scoville, M.J. (W.D. Mich. Feb. 1, 2008)).[18]  Doc. Ent. 9 at 14, Doc. Ent. 9-6.  Caldwell points out that MDOC PD 05.03.150 provides, "[t]he CFA Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition[.]"  MDOC PD 05.03.150 ¶ M, effective 09/20/07;

---

[16]Caldwell makes a similar argument - "Chaplain Caldwell did not make the decision to deny Plaintiff a religious fast." - in her March 22, 2012 motion for summary judgment in *Washington v. Caldwell*, Case No. 2:11-cv-10448-DML-PJK (E.D. Mich.) (Doc. Ent. 32 at 8-10).

[17]"[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Shehee*, 199 F.3d at 300 (quoting *Hays*, 668 F.2d at 874).

[18]In *Hendrickson*, Magistrate Judge Scoville's report and recommendation stated in a footnote, "There is no need for an extended discussion of plaintiff's claims for relief against defendants in their official capacities.  Defendants Palmer and Stoley lacked authority to establish MDOC recognition of Satanism as a religion and could not allow plaintiff to possess books on the MDOC's restricted publications list.  Director Caruso has the requisite authority[,] but there is no underlying RLUIPA violation supporting relief against defendant Caruso in her official capacity."  *See Hendrickson*, No. 1:07-cv-304, 2008 U.S. Dist. LEXIS 117875, *17 n.5 (W.D. Mich. Feb. 1, 2008); Doc. Ent. 9-6 at 7.

Doc. Ent. 9 at 15.  It is Caldwell's position that "[s]ince [she] is [not] authorized to grant or deny Curtis'[s] request, Curtis has failed to set forth a valid claim against her."  Doc. Ent. 9 at 15.

Upon consideration, the Court should conclude that Caldwell has shown she was not personally involved in the alleged denial of Curtis's request for Native American Religious Services with "Native American Ways" at RRF.  First, she has provided a copy of MDOC PD 05.03.150, ¶ M of which provides in part, "[t]he CFA Deputy Director shall make the ***final decision*** as to whether a religious group will be granted Department recognition and, if so, ***whether group religious services and activities*** and personal religious property ***will be allowed***."  *See* Doc. Ent. 9-5 (emphasis added).

Second, in support of her claims, defendant Caldwell provides her December 27, 2011 affidavit.  Doc. Ent. 9-5 at 2-4.  Therein, she explains that "RRF does not currently have Native American group religious services, nor were Native American religious services being conducted when [she] began employment at RRF in May, 2009."  Doc. Ent. 9-5 ¶ 5.  Caldwell disputes Curtis's allegation that she "prevented him from starting Native American religious services at RRF since July, 2010."  Doc. Ent. 9-5 ¶ 6.  After citing MDOC PD 05.03.150 ¶ X, Caldwell attests: "I have not received requests from the minimum number (5) of prisoners who indicate that their faith is Native American and want to have group services scheduled at RRF.  Curtis's allegation that he provided correspondence from ten other prisoners during a conversation with me on August 17, 2011 is false."  Doc. Ent. 9-5 ¶ 9.  Furthermore, Caldwell disputes Curtis's allegation that "[she] stated as long as I am Chaplain here, these savages would not get these services."  According to Caldwell, she "did not make this statement, or any similar statement."

21

Caldwell maintains that "[her] conduct and language remained professional towards Curtis at all times, regardless of the situation."  Doc. Ent. 9-5 ¶ 10.

Therefore, the Court should conclude that defendant Caldwell has shown that she was not personally involved in the alleged denial of Curtis's request for Native American Religious Services with "Native American Ways" at RRF.  *See Yates v. Young*, Nos. 84-5586, 85-5701, 1985 WL 13614, 1 (6th Cir. Aug. 28, 1985) ("We find that the district court properly dismissed the action against Warden Tony Young since Yates did not allege Young's personal involvement in the events forming the basis of the complaint.") (referencing *Preston v. Smith*, 750 F.2d 530 (6th Cir. 1984); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984)).

I recognize that plaintiff's October 3, 2011 complaint is signed under penalty of perjury (Doc. Ent. 1 at 5) and that "courts should consider the allegations in a pro se prisoner's verified complaints (which are effectively affidavits) before entering judgment against him, even if the prisoner fails to cite that evidence in response to a motion for summary judgment."  *Miller v. Jones*, No. 10-5282, 2012 WL 2044366, 1 (6th Cir. June 6, 2012); *see also Evans v. Vinson*, 427 Fed.Appx. 437, 442 (6th Cir. 2011) ("There is no evidence in the record about the conditions Evans faced in administrative segregation. While Evans detailed the conditions of his confinement in his response to the motion for summary judgment, he did not, as the district court acknowledged, 'provide these details under penalty of perjury, in his verified complaint, or in his affidavit attached to his response.'").

However, having reviewed plaintiff's verified complaint (Doc. Ent. 1) and his unverified response (Doc. Ent. 10), I consider as "undisputed for purposes of the motion[,]"  Fed. R. Civ. P. 56(e)(2), the authority described in MDOC PD 05.03.150 ¶ M (Doc. Ent. 9-5 at 7).

To be sure, Curtis claims in his unverified response to the instant motion that defendant Caldwell's job "is the Chaplain, and in being so her job is to set these things up for the inmates, that is why she is the 'Chaplain'." Doc. Ent. 10 at 2. However, Curtis has not properly supported this assertion. *See* Fed. R. Civ. P. 56(c)(1). In other words, his brief response with respect to the issue of personal involvement (Doc. Ent. 10 at 2) does not properly support his assertion that Caldwell's job is to set up such services for the inmates, either by "citing to particular parts of materials in the record[,]" Fed. R. Civ. P. 56(c)(1)(A), or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[,]" Fed. R. Civ. P. 56(c)(1)(B).

Also, there is some debate over whether Curtis gave Caldwell the kites of 10 other inmates on or about August 17, 2011. *See* Doc. Ent. 1 at 10 (Plaintiff's Verified Complaint); Doc. Ent. 9 at 13-14 (Defendant's Motion), Doc. Ent. 9-5 at 3 ¶ 9 (Defendant's Affidavit); Doc. Ent. 10 at 1, 3 (Plaintiff's Response). Even so, the foregoing discussion of exhaustion sets forth how plaintiff's August 15, 2011 grievance could not have grieved the events of August 17, 2011, and this debate does not alter the undisputed fact that defendant Caldwell did not have the authority under MDOC PD 05.03.150 ¶ M to grant plaintiff's request.[19]

---

[19]42 U.S.C. § 1997e provides, in part:

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is

**7.      The Court need not address whether Caldwell is entitled to qualified immunity.**

Caldwell also contends she is entitled to qualified immunity.  Doc. Ent. 9 at 16-17.  "The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).

Here, Caldwell maintains that, because "Curtis'[s] constitutional rights were not violated and Chaplain Caldwell acted reasonably at all times[,]" she is entitled to qualified immunity.  Doc. Ent. 9 at 17.  However, if the Court agrees with my foregoing conclusions, it need not consider whether Caldwell is entitled to qualified immunity.

**III.      <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United*

---

immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c) ("Dismissal").

*States v. Walters*, 638 F.2d 947 (6ᵗʰ Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/26/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 26, 2012.

s/Eddrey Butts
Case Manager

25